**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**


KIMBERLY ANN GAGLIARDI

      Plaintiff,

      v.                                  Case No. 2:17-cv-169-JVB-JEM

NANCY A. BERRYHILL,
Acting Commissioner of
Social Security Administration,

      Defendant.


**OPINION AND ORDER**

Plaintiff Kimberly Ann Gagliardi seeks judicial review of the Social Security

Commissioner's decision denying her disability benefits, and asks this Court to remand the case.

For the reasons below, this Court affirms the ALJ's decision.


**A.      Overview of the Case**

Plaintiff alleges that she became disabled on October 21, 2012. (R. at 284.) Her date last

insured ("DLI") is June 30, 2018. (R. at 297.) Plaintiff previously worked as a bartender, but has

not engaged in substantial gainful activity since 2012. (R. at 22.) After two hearings, the

Administrative Law Judge ("ALJ") found that Plaintiff suffered from severe physical and mental

impairments. (R. at 23.) However, the ALJ concluded that she could perform jobs that existed in

significant numbers. (R. at 30.) Therefore, the ALJ denied her benefits. (R. at 32.) This decision

became final when the Appeals Council denied Plaintiff's request for review. (R. at 1.)


**B.      Standard of Review**

This Court has authority to review the Commissioner's decision under 42 U.S.C. § 405(g). The Court will ensure that the ALJ built an "accurate and logical bridge" from evidence to conclusion. *Thomas v. Colvin*, 745 F.3d 802, 806 (7th Cir. 2014). This requires the ALJ to "confront the [plaintiff's] evidence" and "explain why it was rejected." *Thomas v. Colvin*, 826 F.3d 953, 961 (7th Cir. 2016). The Court will uphold decisions that apply the correct legal standard and are supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005). Evidence is substantial if "a reasonable mind might accept [it] as adequate to support [the ALJ's] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

## C.     Disability Standard

The Commissioner follows a five-step inquiry in evaluating claims for disability benefits under the Social Security Act:

> (1) whether the claimant is currently employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling; (4) if the claimant does not have a conclusively disabling impairment, whether he can perform his past relevant work; and (5) whether the claimant is capable of performing any work in the national economy.

*Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir. 2012).

The claimant bears the burden of proof at every step except step five. *Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000).

## D.     Analysis

Plaintiff argues that the ALJ erred in finding that she was not disabled. Specifically, she argues that the ALJ: 1) ignored evidence of her left-elbow injury, 2) improperly discounted the opinion of her treating physician, 3) misunderstood the testimony of the medical expert, and 4)

ignored the report of a consultative examiner.

**(1)      The ALJ Properly Considered the Effects of Plaintiff's Left-Elbow Injury**

Plaintiff injured her left elbow in 2015. (R. at 813.) An MRI revealed a possible calcific tendinosis. (R. at 819.) Her doctor instructed her to "[u]se an elbow brace and apply ice as needed." (R. at 811.) Meanwhile, Plaintiff testified that her left elbow hurt constantly and claimed that she could not lift anything without her other hand. (R. at 54.) Her left arm, in other words, was practically unusable. The ALJ never specifically mentioned tendinosis, which Plaintiff charges as error.

The Commissioner's response is bizarre. She begins by assuring this Court that the ALJ properly considered the impairments of people named Lowe and Lewis and then spends three pages defending portions of the ALJ's decision that Plaintiff did not attack. (Def.'s Resp. at 3–6.) As to Plaintiff's actual argument, the Commissioner brazenly asserts that "the administrative record is devoid of evidence related to" the injury, despite Plaintiff citing to the aforementioned doctor's notes and MRI results. She also attacks Plaintiff's failure to mention "elbow tendinitis" in her disability application. (R. at 362–67.) Yes, when Plaintiff applied for disability in 2013, she neglected to predict that she would injure her elbow two years later, but this Court will not fault Plaintiff for a lack of clairvoyance. *See also* 20 C.F.R. § 404.1512(a)(1) ("We will consider . . . impairment(s) . . . about which we receive evidence.").

Lastly, the Commissioner points to a 2013 examination showing "normal elbow flexion and rotation." (Def.'s Resp. at 6.) First of all, this Court is unsurprised that a doctor would find no evidence of an injury that had yet to occur. Second, the Commissioner actually cited a 2015 doctor's visit that identified "Left elbow pain" as an active problem. (R. at 861.) Third, the ALJ

never mentioned this report, so the Commissioner cannot use it to defend the decision. *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009).

Nevertheless, the question is whether the ALJ ignored the effect of the impairment, not the impairment itself. *Skinner v. Astrue*, 478 F.3d 836, 845 (7th Cir. 2007). Here, Plaintiff claimed that, because of the elbow injury, she was in constant pain and could not lift anything with her left hand. (R. at 54.) But the ALJ addressed Plaintiff's alleged "constant pain in her arms" and her limited "ability to lift . . . and use her hands" by pointing to several unremarkable observations. (R. at 26–27.) *See Pierce v. Colvin,* 739 F.3d 1046, 1050 (7th Cir. 2014) ("the lack of objective support from physical examinations and test results is still relevant"); *Mueller v. Astrue*, 860 F. Supp. 2d 615, 634 (N.D. Ill. 2012) (affirming where an ALJ discounted pain allegations by referring to unremarkable MRI results). In the end, an ALJ need only "minimally articulate his reasons for . . . rejecting evidence of disability." *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992). The ALJ did so here.

As for the objective evidence that Plaintiff cited, while it does show that Plaintiff has elbow issues, the Commissioner correctly notes that "at no point in the record did she receive instructions from her physicians to restrict activities." (Def.'s Resp. at 6.) Rather, the doctor simply instructed her to use an elbow brace, apply ice, and report for physical therapy. (R. at 811.) Furthermore, the examination merely reveals what the ALJ already considered: pain and trouble lifting. (R. at 810.) Moreover, the doctor did not even find elbow pain in an examination one month later. (R. at 865.) And in any event, "an ALJ need not mention every piece of evidence." *Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010). This Court finds no error here.

## (2)    The ALJ Properly Discounted Dr. Hunter's Opinion

Dr. Hunter provided a medical source statement in which she opined that Plaintiff

suffered several severe mental limitations. (R. at 786–90.) The ALJ assigned it "little evidentiary weight" because Dr. Hunter 1) had only seen Plaintiff one time prior to the opinion, 2) seemed to base the opinion "primarily on [Plaintiff's] subjective complaints," and 3) went against the record as a whole. (R. at 29.) In *Butera v. Apfel*, the ALJ discounted a medical opinion that was based on a one-time evaluation that did not rely on "any evidence beyond [the doctor's] own examination and [the plaintiff's] subjective complaints." 173 F.3d 1049, 1056–57 (7th Cir. 1999) (holding that the ALJ properly discredited the opinion). Here, the ALJ used that same logic and, like in *Butera*, supported the analysis with substantial evidence.

Dr. Hunter wrote her opinion after a single "medication management" visit. (R. at 786.) Plaintiff counters that Dr. Hunter would have had access to Plaintiff's records of prior treatment, since colleagues of the doctor had previously treated Plaintiff. (Pl.'s Brief at 13.) This could have given Dr. Hunter a more complete picture of Plaintiff's condition. But Dr. Hunter did not seem to rely on any records: when asked to describe the evidence on which she based her opinion, she simply repeated what Plaintiff told her about the panic attacks. (R. at 787.) *Cf. Gonzalez v. Colvin*, 2016 U.S. Dist. LEXIS 131650, *22 (C.D. Cal., Sept. 26, 2016) ("Nor does anything in the record indicate that Dr. Al-Wordi necessarily reviewed Plaintiff's medical records"). The ALJ, on the other hand, cited to multiple doctors' visits in which Plaintiff displayed appropriate mood and affect, as well as intact concentration, insight, and thought processes. (R. at 29–30.)

Plaintiff, still unsatisfied, notes that an ALJ must discuss certain factors when weighing a medical opinion. (Pl.'s Br. at 14.) This is true, but the only factor that the ALJ failed to discuss was "whether the physician specializes in the medical conditions at issue." *Elder v. Astrue*, 529 F.3d 408, 415 (7th Cir. 2008). This omission alone does not require a remand. *Simila v. Astrue*, 573 F.3d 503, 516 (7th Cir. 2009). *See also Kirby v. Colvin*, 2014 U.S. Dist. LEXIS 138163,

*13–16 (S.D. Ind., Sept. 30, 2014) (holding that the ALJ adequately discussed the factors by referencing a limited treatment history and inconsistencies with the record).

Plaintiff next argues that the ALJ failed to first determine whether Dr. Hunter's opinion was "well-supported" by objective medical tests and "not inconsistent" with the evidence as a whole, which would entitle the opinion to "controlling weight." 20 C.F.R. § 404.1527(c)(2). But the ALJ did not need to do this, because Dr. Hunter was not a treating physician at the time. A doctor becomes a treating physician when she establishes an "ongoing treatment relationship" with the plaintiff.  20 C.F.R. § 404.1527(a)(2). Granted, a doctor need not see a patient every day, but a single visit can hardly be considered an "ongoing treatment relationship." *White v. Barnhart*, 415 F.3d 654, 658 (7th Cir. 2005) ("Dr. Zondag, who examined White once, fits the definition of a nontreating source."); *Kirby*, 2014 U.S. Dist. LEXIS 138163 at *15 (finding that when a doctor sees a plaintiff only once, "the presumption of favoring a treating physician's opinion . . . loses its force"); s*ee also Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 506 (6th Cir. 2006) ("The question is whether [Dr.] Lian had the ongoing relationship . . . *at the time he rendered his opinion*") (emphasis in original). Even if Dr. Hunter were a treating physician at the time, her opinion was inconsistent with the record as a whole. Thus, the ALJ did not need to afford her opinion controlling weight.

**(3)     The ALJ Properly Discussed Dr. Cremerius' Testimony**

Dr. Cremerius testified as an impartial medical expert at Plaintiff's supplemental hearing. (R. at 55–68). The ALJ afforded the doctor's testimony "substantial evidentiary weight." (R. at 29.) Dr. Cremerius reviewed Dr. Hunter's opinion that Plaintiff "would have difficulty with absenteeism" and testified that he had no "reason to take issue with that assessment." (R. at 65.) According to Plaintiff, this shows that Dr. Cremerius adopted Dr. Hunter's opinion and that, if

the ALJ truly gave Dr. Cremerius' testimony substantial weight, then the ALJ should have found Plaintiff to be disabled. (Pl.'s Br. at 17.) After all, the vocational expert testified that, if Dr. Hunter were correct, then Plaintiff would be unemployable. (R. at 67.) Plaintiff, however, fails to mention that Dr. Cremerius opined that there would be "no issue with absenteeism if the work was within the restrictions that [he] outlined." (R. at 66.) Thus, his testimony goes against Dr. Hunter's opinion, and the ALJ was entitled to rely on a medical expert's testimony over a one-time examiner's opinion. *White,* 415 F.3d at 659 (7th Cir. 2005).

Plaintiff additionally argues that the ALJ erred by failing to provide any specific quotes from Dr. Cremerius' testimony and by simply crediting the opinion "to the extent it is consistent with the findings herein." (Pl.'s Br. At 16.) However, the so-called harm of this alleged error comes from Plaintiff's flawed assertion that Dr. Cremerius blindly accepted Dr. Hunter's opinion on Plaintiff's absenteeism. Thus, to the extent that the ALJ even erred, it was harmless error.

**(4)      The ALJ's Failure to Mention Dr. Nordstrom's Report Was Harmless Error**

Dr. Nordstrom examined Plaintiff's mental status in 2013. (R. at 501–03.) He found that Plaintiff had "moderate symptoms of anxiety and recurrent panic attacks" that usually occur in "crowded or enclosed spaces," as well as memory issues "that appear[] to be secondary to anxiety." (R. at 503.) Plaintiff correctly notes that the ALJ failed to mention this report. (Pl.'s Br. at 15.) But an ALJ need not explicitly mention evidence if her opinion "strongly indicat[es]" that she analyzed the evidence. *Diaz v. Chater,* 55 F.3d 300, 308 (7th Cir. 1995).

Here, the ALJ relied on a medical expert and an Agency examiner, both of whom read the Nordstrom report. (R. at 57, 139.) *See Bryant v. Colvin*, 571 Fed. Appx. 186, 190 (4th Cir. 2014) ("this error [was] harmless as well because Dr. Harkhani's report was discussed by the two state agency consultants and was consistent with the medical evidence in the record"). Moreover, the

ALJ accounted for the anxiety and memory issues that Dr. Nordstrom found by limiting Plaintiff

to "no interaction with the general public" and "simple, routine, unskilled work." (R. at 26.) The

ALJ furthermore specifically addressed Plaintiff's issues with crowds ("She claims she has a

hard time being around people") as well as her memory issues ("the claimant's memory has

routinely been preserved"). (R. at 25, 28.) The Nordstrom report adds nothing that the ALJ did

not already consider, so any error here is harmless. *See Meyerink v. Colvin*, 2015 U.S. Dist.

LEXIS 21575, *18 (N.D. Ind., Feb. 24, 2015) ("The records cited by Plaintiff include similar

limitations to those the ALJ discussed, and not mentioning those records was therefore not

error"); *Adams v. Astrue*, 880 F. Supp. 2d 895, 911 (N.D. Ill. 2012) ("a remand for this reason

alone would be futile as the ALJ would likely come to the same RFC determination through

explicit mention of Drs. Tin and Heinrich").

### E.      Conclusion

The ALJ adequately discussed the effects of Plaintiff's left-elbow injury, validly

discounted Dr. Hunter's opinion, and properly evaluated Dr. Cremerius' opinion. Although the

ALJ did not specifically reference Dr. Nordstrom's report, any error here was harmless.

Accordingly, this Court affirms the ALJ's decision.


SO ORDERED on September 4, 2018.


 S/ Joseph S. Van Bokkelen
JOSEPH S. VAN BOKKELEN
UNITED STATES DISTRICT JUDGE